```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ROBERT CAVANAGH and JOANNE CAVANAGH,

                    Plaintiffs,
                                            MEMORANDUM & ORDER
          -against-                         13-CV-4584(JS)(WDW)

FORD MOTOR COMPANY; ALTEC, INC.;
and ALTEC INDUSTRIES, INC.,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiffs:        Joseph G. Dell, Esq.
                       Christopher Dean, Esq.
                       James V. Durgana, Esq.
                       Dell & Dean, PLLC
                       1325 Franklin Avenue, Suite 100
                       Garden City, NY 11530

For Defendants
Ford Motor Co.:        Peter Joseph Fazio, Esq.
                       Aaronson, Rappaport, Feinstein
                          & Deutsch
                       600 Third Ave.
                       New York, NY 10016

Altec, Inc. &
Altec Industries,
Inc:                   Carl Judah Schaerf, Esq.
                       Schnader Harrison Segal
                          & Lewis LLP
                       140 Broadway, Suite 3100
                       New York, NY 10005
```

SEYBERT, District Judge:

Plaintiffs Robert and Joanne Cavanagh (collectively, "Plaintiffs") commenced this products liability action on July 30, 2013 in New York State Supreme Court, Suffolk County, against defendants Altec, Inc.; Altec Industries, Inc. (together,

"Altec"); and Ford Motor Company ("Ford," and together with Altec, "Defendants"). Plaintiffs, who are spouses, allege that they suffered damages as a result of injuries that Mr. Cavanagh allegedly sustained while using a bucket truck designed, manufactured, and sold by Defendants. Ford removed the action to this Court on the basis of diversity jurisdiction pursuant to 42 U.S.C. § 1332. Ford now moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose Ford's motion and cross-move, in the alternative, for leave to file an amended complaint should the Court find the Complaint to be deficient. For the following reasons, Ford's motion to dismiss the Complaint is GRANTED with leave to amend.

BACKGROUND[1]

Plaintiffs are residents of Suffolk County, New York. (Compl. ¶ 1[2].) Plaintiffs allege that on August 13, 2010, Mr. Cavanagh was using a 2000 Ford F650 Altec TA41 46' Bucket Truck--a bucket truck designed and manufactured by Defendants (the "Bucket Truck")--"in the manner intended and/or foreseeably intended, when the product malfunctioned, failed, jammed, and/or otherwise caused

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[2] The Complaint is attached as Exhibit A to Ford's Notice of Removal. (See Docket Entry 1 at 9.)

2

injury to [Mr. Cavanagh], thereby causing severe and catastrophic personal injuries to [Mr. Cavanagh]." (Compl. ¶¶ 8, 12; see also Compl. ¶ 19 ("That on August 13, 2013 . . . [Mr. Cavanagh] while using the product in accordance with its intended use and pursuant to the Defendants' instructions, if any, was caused to suffer and sustain severe bodily injuries.").)

The Court reads the Complaint to assert the following causes of action: (1) negligence and strict products liability based on theories of design defect, manufacturing defect, and failure to warn; (2) breach of express and implied warranties; and (3) loss of consortium. However, besides the allegations that Mr. Cavanagh was using the Bucket Truck on August 13, 2010 and was subsequently injured, the Complaint is entirely devoid of any other factual allegations supporting the causes of action asserted.

On August 21, 2013, Ford moved to dismiss the Complaint, arguing that the Complaint fails to meet the Iqbal/Twombly pleading standard.[3] (Docket Entry 5.) Plaintiffs opposed and cross-moved, in the alternative, for leave to file an amended complaint should the Court find the Complaint to be deficient. (Docket Entry 11.) Plaintiffs' cross motion attaches a proposed amended complaint. These motions are currently pending.

---

[3] Altec answered the Complaint on August 22, 2013. (Docket Entry 6.)

DISCUSSION

The Court will first address Ford's motion to dismiss the Complaint before turning to Plaintiffs' alternative motion for leave to file an amended complaint.

I.  Ford's Motion to Dismiss

Ford moves to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to meet the Iqbal/Twombly "plausibility" pleading standard. Before addressing Ford's motion to dismiss, it must be noted that deciphering Plaintiffs' claims herein was not easy. The claims are not clearly pleaded. For instance, paragraph 22 of the Complaint consists of one sentence spanning nearly an entire page of the Complaint and each cause of action is not labeled. Moreover, Plaintiffs' opposition offers little clarity, as Plaintiffs failed to analyze each cause of action under the Iqbal/Twombly pleading standard. Indeed, Plaintiffs' only substantive argument is confined to two sentences of their opposition and only addresses Plaintiffs' negligence claim under a design defect theory. (See Dean Affirm, Docket Entry 11, ¶ 8.) In any event, the Court will analyze each claim asserted in the Complaint below.

   A.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal,

556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B. <u>Strict Products Liability Claims</u>

"A cause of action in strict products liability lies where a manufacturer places on the market a product which has a defect that causes injury." <u>Robinson v. Reed-Prentice Div. of Package Mach. Co.</u>, 49 N.Y.2d 471, 478, 403 N.E.2d 440, 443, 426 N.Y.S.2d 717, 720 (1980) (citation omitted). New York law recognizes that a defect may exist in three ways--improper design, mistake in manufacturing, or by the inadequacy or absence of warning regarding the use of the product. <u>Id.</u> (internal citations omitted).

1. <u>Design Defect</u>

Under New York law, a strict products liability claim based on a design defect theory "is premised on a manufacturer's failure to properly design a product, which is then placed on the market despite posing inappropriate risks." <u>Reed v. Pfizer, Inc.</u>, 839 F. Supp. 2d 571, 577 (E.D.N.Y. 2012) (citing <u>Voss v. Black & Decker Mfg.</u>, 59 N.Y.2d 102, 107, 450 N.E.2d 204, 207, 463 N.Y.S.2d 398, 401 (1983)). To state a claim for design defect, a plaintiff must allege: "'(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.'" <u>Simon v. Smith & Nephew, Inc.</u>, No. 13-CV-1909, 2013 WL 6244525, at *5 (S.D.N.Y. Dec. 3, 2013) (quoting <u>Colon v. BIC USA, Inc.</u>, 199 F. Supp. 2d 53, 83

(S.D.N.Y. 2001)). Thus, a design defect claim is properly dismissed "where [the] plaintiff fails to plead facts identifying how the device is defectively designed or the existence of a feasible alternative design." Bertini v. Smith & Nephew, Inc., No. 13-CV-0079, 2013 WL 6332684, at *3 (E.D.N.Y. July 15, 2013) (citing Reed, 839 F. Supp. 2d at 577-78).

Plaintiffs fail to plead any facts supporting their claim that the Bucket Truck was defectively designed. The Complaint does not identify how the Bucket Truck was defectively designed, nor does the Complaint make any mention of a feasible alternative design. Rather, the Complaint merely states legal conclusions, such as that the "said product was defective and that said defect was a substantial factor in causing the injury . . . ." (Compl. ¶ 29.) These conclusory allegations do not suffice to state a claim for design defect. See Reed, 839 F. Supp. 2d at 577-78 (dismissing design defect claim because plaintiffs "merely plead[ed] the legal conclusion that the [product] was defective" and "[did] not plead facts alleging the existence of a feasible alternative design that would make the product safer"); Am. Guar. and Liab. Ins. Co. v. Cirrus Design Corp., No. 09-CV-8357, 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010) (dismissing design defect claim because plaintiffs "[did] not specify a particular design defect, nor [did] they make any mention of a feasible alternative

7

design"). Accordingly, Plaintiffs' design defect claim is DISMISSED for failure to state a plausible claim.

### 2. Manufacturing Defect

"'A manufacturing defect claim is premised on the relevant product being defective because it was not manufactured as designed.'" Goldin v. Smith & Nephew, Inc., No. 12-CV-9217, 2013 WL 1759575, at *2 (S.D.N.Y. Apr. 24, 2013) (quoting Reed, 839 F. Supp. 2d at 577); see also Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 560 (S.D.N.Y. 2005) ("The crux of a . . . manufacturing defect claim is the product's failure to perform as expected due to an error in the manufacturing process that resulted in a defect." (citations omitted)). To state a claim for manufacturing defect, a plaintiff must plead "[1] that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and [2] that the defect was the cause of plaintiff's injury." Colon, 199 F. Supp. 2d at 85 (quoting Caprara v. Chrysler Corp., 52 N.Y.2d 114, 129, 417 N.E.2d 545, 552, 436 N.Y.S.2d 251, 258 (1981)). Explained another way, a manufacturing defect "exists when the unit in question deviates in quality and other performance standards from all of the other identical units." Id. (citing Perazone v. Sears, Roebuck & Co., 128 A.D.2d 15, 18, 515 N.Y.S.2d 908, 911 (3d Dep't 1987)). Thus, a manufacturing defect claim is subject to dismissal

8

where the plaintiff "has not alleged that 'the particular [product] . . . had a defect as compared to other samples of that [product].'" Goldin, 2013 WL 1759575, at *2 (quoting Reed, 839 F. Supp. 2d at 577).

Like the design defect claim, Plaintiffs have failed to plead any facts supporting a manufacturing defect claim. As noted above, the Complaint does not identify the defective component of the Bucket Truck. Additionally, the Complaint does not supply any facts regarding the manufacturing process, nor does it allege that the Bucket Truck was defective as compared to other bucket trucks manufactured by Defendants. Again, Plaintiffs' allegations are mere legal conclusions. See Am. Guar. & Liab. Ins. Co., 2010 WL 5480775, at *3 (dismissing manufacturing defect claim because "Plaintiffs [did] not only fail[] to specify the defective component but . . . also failed to adequately allege any deviations from the manufacturing process, improper workmanship, or defective materials"); Lewis v. Abbott Labs., No. 08-CV-7480, 2009 WL 2231701, at *6 (S.D.N.Y. July 24, 2009) (dismissing manufacturing defect claim because plaintiff "[did] not allege that the particular [product] administered to her had a defect as compared to other [samples of the product]"); see also Barrett v. Black & Decker (U.S.) Inc., No. 06-CV-1970, 2008 WL 5170200, at *11 (S.D.N.Y. Dec. 9, 2008) ("Plaintiff fails to plead which part of the [product] was defective, or in what way some particular defect

9

caused plaintiff's injury."). Accordingly, Plaintiffs' manufacturing defect claim is DISMISSED for failure to state a plausible claim.

### 3. Failure to Warn

Under New York law, "'[a] product may be defective when . . . it is not accompanied by adequate warnings for use of the product.'" Saladino v. Stewart & Stevenson Servs., Inc., 704 F. Supp. 2d 237, 247 (E.D.N.Y. 2010) (ellipsis in original) (quoting Liriano v. Hobart Corp., 92 N.Y.2d 232, 237, 700 N.E.2d 303, 305, 677 N.Y.S.2d 764, 766 (1998)). A plaintiff asserting a failure to warn claim must allege: "'(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm.'" See Am. Guar. & Liab. Ins. Co., 2010 WL 5480775, at *3 (quoting Colon, 199 F. Supp. 2d at 84).

The Complaint does not plead any facts supporting a failure to warn claim. Because Plaintiffs "have not adequately specified the danger that was not warned against, they cannot state a plausible claim for failure to warn." Id., at *3. Accordingly, Plaintiffs' failure to warn claim is DISMISSED for failure to state a plausible claim.

10

4. <u>Breach of Express Warranty</u>

Under Section 2-313 of the New York Uniform Commercial Code, an express warranty is created by

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.Y. U.C.C. § 2-313(1)(a)-(c). "A successful claim of a breach of express warranty requires proof that an express warranty existed, was breached, and that plaintiff had relied on that warranty." <u>Reed</u>, 839 F. Supp. 2d at 578 (citations omitted). "Where a '[p]laintiff does not identify the terms of the purported warranty he claims to have relied on,' any 'conclusory allegation . . . for breach of express warranty [must] be dismissed.'" <u>Goldin</u>, 2013 WL 1759575, at *6 (alterations and ellipsis in original) (quoting <u>Pinello v. Andreas Stihl Ag & Co. KG</u>, No. 08-CV-0452, 2011 WL 1302223, at *16 (N.D.N.Y. Mar. 31, 2011)). Further, "a successful breach of warranty claim requires that the product be defective."

Reed, 839 F. Supp. 2d at 578 (citing Plemmons v. Steelcase Inc., No. 04-CV-4023, 2007 WL 950137, at *5 (S.D.N.Y. Mar. 29, 2007)).

Plaintiffs have not alleged with sufficient specificity the terms of the alleged warranty Mr. Cavanagh claims to have relied on, nor have they, as noted above, adequately alleged that the Bucket Truck was indeed defective. Accordingly, Plaintiffs' breach of express warranty claim is DISMISSED for failure to state a plausible claim.

5. Breach of Implied Warranty

An "implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used." Plemmons, 2007 WL 950137, at *3 (citation omitted). To plead an implied warranty claim, Plaintiff must allege: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident." Id. at *3 (citations and internal quotation marks omitted).

Liability under strict products liability and implied warranty theory are "essentially the same." Dalton v. Stedman Mach. Co., No. 05-CV-0452, 2008 WL 351676, at *7 (N.D.N.Y. Feb. 7, 2008) ("The [New York] Court of Appeals has held that liability under strict products liability and implied warranty theory are essentially the same, except that under the implied warranty

theory, it is not necessary to show the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in the unsafe condition." (quoting Denny v. Ford Motor Co., 87 N.Y.2d 248, 261-63, 662 N.E.2d 730, 738-39, 639 N.Y.S.2d 250, 258-59 (1995))).

As noted above, Plaintiffs have not adequately pleaded a claim for strict products liability under a design defect, manufacturing defect, or failure to warn theory. Thus, Plaintiffs have failed to state a plausible claim that Defendants breached an implied warranty. See Lewis, 2009 WL 2231701, at *6 ("[P]laintiff has not pleaded necessary elements to support a design, failure to warn, or manufacturing defect claim. Therefore, plaintiff has failed to plead an essential element of her breach of implied warranty claim."). Accordingly, Plaintiffs' breach of implied warranty claim is DISMISSED for failure to state a plausible claim.

C. Negligence Claims

"New York courts generally consider strict products liability and negligence claims to be 'functionally synonymous.'" Pinello, 2011 WL 1302223, at *16 (quoting Denny, 87 N.Y.2d at 255, 662 N.E.2d at 733, 639 N.Y.S.2d at 253). Although "the Second Circuit has characterized this aspect of New York products liability as unsettled because the New York Court of Appeals has yet to affirmatively hold that negligence and strict liability have merged," id. (citing Jarvis v. Ford Motor Co., 283 F.3d 33,

13

63 (2d Cir. 2002)), "New York courts have treated the differences between negligence and strict liability as inconsequential," Valente v. Textron, Inc., 931 F. Supp. 2d 409, 437 n.24 (E.D.N.Y. 2013) (citation omitted), aff'd, --- F. App'x ----, 2014 WL 903820 (2d Cir. Mar. 10, 2014). See also Savage v. Beiersdorf Inc., No. 13-CV-0696, 2013 WL 5532756, at *5 (S.D.N.Y. Sept. 30, 2013) ("[F]ailure to warn claims are identical under strict liability and negligence theories of recovery." (quoting Colon, 199 F. Supp. 2d at 84)); Gaudette v. Saint-Gobain Performance Plastics Corp., No. 11-CV-0932, 2014 WL 1311530, at *11 (N.D.N.Y. Mar. 28, 2014) ("In order to prove a design defect claim, the same prima facie case is required under both negligence and strict liability theories." (citing Jarvis, 283 F.3d at 62-63)). Accordingly, for the reasons set forth above, Plaintiffs' negligence claim is DISMISSED for failure to state a plausible claim. See Goldin, 2013 WL 1759575, at *6.

## II. Plaintiffs' Motion for Leave to Amend

Plaintiffs have cross-moved for leave to file an amended complaint in the event that the Court found Plaintiffs' Complaint to be deficient. As the Court has dismissed each of the claims in Plaintiffs' Complaint, the Court will now consider Plaintiffs' motion to file an amended complaint. In support of the motion, Plaintiffs' have attached a Proposed Amended Complaint. (Proposed Am. Compl. ("PAC"), Docket Entry 11-2.) The Court will first set

forth the applicable legal standard before turning to Plaintiffs' motion.

   A.   Legal Standard

Leave to file an amended complaint "shall be freely given when justice so requires," FED. R. CIV. P. 15(a), and "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility," Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).  While granting leave to amend is generally favored, "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life. Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).  Thus, a court must deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." Riverhead Park Corp. v. Cardinale, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

B. Application

Here, the Court does not find that Plaintiffs' proposed amendments are the product of any proven undue delay or bad faith. See Goldin, 2013 WL 1759575, at *7 ("Indeed, given that the Complaint was drafted as part of a state court filing, but is now subject to the higher pleading standards applicable in federal court, it would be particularly consistent with principles of fairness and justice to afford Plaintiff an opportunity to file an amended complaint."). Moreover, there is no evidence that the proposed amendments will result in prejudice to Ford. Thus, the only issue, then, is whether Plaintiffs' amendments are futile.

1. Design Defect

Ford argues that the Proposed Amended Complaint fails to correct the pleading deficiencies of the design defect claim in the original Complaint because Plaintiffs "do not establish that Ford's product posed a substantial likelihood of harm as designed, or that a different design was feasible." (Ford's Reply Br., Docket Entry 13, at 7-8.) However, Plaintiffs need not "establish" their claims at the dismissal stage; Plaintiffs only need to state plausible claims to relief. Here, the Court finds that Plaintiffs have corrected the pleading deficiencies of the Complaint by (1) identifying the defective component of the Bucket Truck (i.e., the stairs leading to the passenger cab); (2) identifying several other alternative designs; and (3) alleging that Mr. Cavanagh was

16

injured while exiting the Bucket Truck's cab due to the allegedly defective stairs. (PAC ¶¶ 24-27, 29-32.) Although Plaintiffs may not ultimately succeed in this action, that question is not currently before the Court. Accordingly, Plaintiffs' motion to file an amended complaint with respect to the design defect claims is GRANTED.

2. Manufacturing Defect

Plaintiffs' Proposed Amended Complaint makes no attempt to amend the manufacturing defect claims and such claims are still subject to the pleading deficiencies identified above. Accordingly, the manufacturing defect claims are DISMISSED WITH PREJUDICE.

3. Failure to Warn

Ford next argues that Plaintiffs' motion to amend their failure to warn claims must also be denied because: (1) Plaintiffs "do not identify the allegedly defective warnings, nor do they allege facts in support of their claim that the warnings were, in fact, defective"; and (2) Plaintiffs "do not demonstrate how the alleged 'hazards of the product's steps and/or stairs' were not obvious" or that Plaintiff "was not fully aware of the alleged danger." (Ford's Reply Br. at 11.) The Court disagrees.

First, Plaintiffs are not, as Ford contends, claiming that Defendants supplied an inadequate warning. Rather, they are alleging that the absence of a warning altogether regarding the

17

"tripping and slipping hazards of the product's steps and/or stairs" gives rise to a failure to warn claim. (See PAC ¶ 39.)

Second, although it is true that "[w]arnings are not required if the danger is open and obvious or if the plaintiff [is] aware of the risk," Saladino v. Stewart & Stevenson Servs., Inc., 704 F. Supp. 2d 237, 247 (E.D.N.Y. 2010) (citation omitted), "[w]hether a danger is in fact common knowledge among the public is ordinarily a question of fact that cannot be resolved at the motion to dismiss stage," Porrazza v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 418 (S.D.N.Y. 2011) (citations omitted). Here, the Court cannot say, based on the allegations of the Proposed Amended Complaint that the hazard alleged was open and obvious so as to relieve Ford of supplying a warning regarding the Bucket Truck's steps. Accordingly, Plaintiffs' motion to file an amended complaint with respect to the failure to warn claims is GRANTED.

4. Breach of Express and Implied Warranties

Plaintiffs' Proposed Amended Complaint makes no attempt to amend the breach of express warranty claim and such claim is still subject to the pleading deficiencies identified above. Accordingly, the breach of express warrant claim is DISMISSED WITH PREJUDICE.

With respect to the implied warranty claim, Ford argues that the Proposed Amended Complaint does not state a claim for breach of implied warranty because it "fail[s] to allege that the

18

subject vehicle was defectively designed." (Ford's Reply Br. at 12.) However, as noted above, the Court finds that the Proposed Amended Complaint pleads the necessary elements to support a design defect claim. Accordingly, Plaintiffs' breach of implied warranty claim remains.[4]

## CONCLUSION

For the foregoing reasons, Ford's motion to dismiss the Complaint is GRANTED with leave to amend. However, for the reasons noted above, Plaintiffs' manufacturing defect and breach of express warranty claims are DISMISSED WITH PREJUDICE.

The Clerk of the Court is directed to docket the Proposed Amended Complaint as the operative complaint. However, the Amended Complaint remains operative only to the extent that it is consistent with the Court's rulings explained above.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    May   19  , 2014
          Central Islip, New York

---

[4] Since the Court has not dismissed all of Plaintiffs' claims, Plaintiffs' claim for loss of consortium, which is a derivative claim, also survives. See Jones v. United States, 408 F. Supp. 2d 107, 126 (E.D.N.Y. 2006) ("It is well settled under New York law that a claim for loss of consortium 'is a derivative action and, as such, its viability is dependent on the viability of a primary cause of action . . . .'" (quoting Panczykowski v. Laborers Int'l Union of N. Am., No. 97-CV-036A, 2000 WL 387602, at *14 (W.D.N.Y. Mar. 31, 2000))).

19